UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| YAZMIN GONZALEZ,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>THE SAVINGS BANK MUTUAL LIFE<br>INSURANCE COMPANY OF<br>MASSACHUSETTS<br><br>　　　　　　　Defendant. | §§§§§§§§§§§§§§<br><br>EP-24-CV-00289-DB |

## COMPLAINT

Pro Se Plaintiff Yazmin Gonzalez files this Complaint against The Savings Bank Mutual Life Insurance Company of Massachusetts for violations of the federal Telephone Consumer Protection Act ("TCPA") and its regulations alleging as follows:

## INTRODUCTION

1. Beginning of February 2024, Plaintiff began to receive a barrage of illegal telemarketing calls made on behalf of The Savings Bank Mutual Life Insurance Company of Massachusetts by an unknown anonymous telemarketer soliciting life insurance.

2. Plaintiff seeks redress under the TCPA, demanding that the calls stop.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Counts I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

1

4. This Court has general personal jurisdiction over Defendant because Defendant's principal office is located in Farmers Branch, Texas.

5. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

6. Plaintiff YAZMIN GONZALEZ ("Plaintiff" or "Gonzalez") is a natural person domiciled in Texas who received incessant and intrusive calls made on behalf of The Savings Bank Mutual Life Insurance Company of Massachusetts to market life insurance.

7. Defendant THE SAVINGS BANK MUTUAL LIFE INSURANCE COMPANY OF MASSACHUSETTS ("Defendant" or "SBLI") is an Insurance Company organized and existing under the laws of Massachusetts and can be served via register agent Matthew C. Regan III at 1 Linscott Rd, Woburn, MA 01801.

8. Unnamed Party ESWORTH RAWLING ("Rawling") is an insurance agent appointed and authorized by Defendant SBLI to market and sell insurance on behalf of SBLI.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a …

2

cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.   *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.   The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.   Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.   A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an

individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.")

## FACTUAL ALLEGATIONS

22. Plaintiff successfully registered her phone number ending in -1859 on the National Do-Not-Call Registry ("DNC") in March 2022.

23. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

24. Rawlings is a licensed insurance agent who was appointed by SBLI to market, solicit, and sell insurance on behalf of SBLI on February 20, 2024.

25. SBLI appointed Rawlings with the knowledge and expectation that Rawlings would make phone calls to solicit SBLI's products and services.

26. SBLI had the responsibility to ensure the agents SBLI appointed and authorized to solicit their products obeyed federal and state consumer protection laws.

27. On or about February 2, 2024, Plaintiff began receiving such calls from Defendant to her El Paso-area cellular telephone number ending in -1859.

28. Each and every call contained a prerecorded voice message stating the following:

"Hi, this is Stephanie, I'm calling you from American Benefits…"

29. Plaintiff received at least eight (8) calls from a variety of spoofed phone numbers from telemarketers soliciting life insurance on behalf of SBLI.

30. Plaintiff answered calls #1 through call #3, the calls started with the same prerecorded voice message described in paragraph 28. Plaintiff disconnected the calls.

31. On call #4, Plaintiff answered, and again, the same prerecorded voice message described in paragraph 28 started playing. Plaintiff was then connected to a telemarketer who did not identify who he was calling on behalf of." The telemarketer was soliciting for life insurance.

32. Plaintiff informed the telemarketer she was not interested and to stop calling.

33. Plaintiff answered calls #5 and #6, and again, the same prerecorded voice message began to play. Plaintiff disconnected the calls.

34. On February 20, 2024, Plaintiff received call #8 from phone number 915-755-2986. Plaintiff was then connected to the same telemarketer who was soliciting for life insurance.

35. Plaintiff was annoyed by the calls and pretended to be her mother, "Norma," to ascertain who was behind the solicitation calls.

36. The telemarketer asked qualifying questions and then was transferred to an agent who identified himself as "Esworth Rawlings" who did not identify the company he worked for.

37. Agent Rawlings verified and asked qualifying questions to Plaintiff. Rawlings then informed Plaintiff he was going to transfer her to an agent from SBLI. An insurance agent named "Bell" completed the application.

38. On or about February 27, Plaintiff received the life insurance policy in the mail and confirmed the solicitation calls were on behalf of Defendant SBLI.

39. SBLI issued policy number 609390544, and page 4 of the application included Esworth Rawlings' signature. This is the same Rawlings that Plaintiff spoke to on February 20, 2024.

40. Plaintiff canceled her insurance on April 24, 2024, and ended the established business relationship created when Plaintiff purchased the insurance policy as part of her investigation.

41. Plaintiff did not have an established business relationship with Defendant, nor did Plaintiff consent to any of these calls.

42. Plaintiff answered each call described in Table A. Every call Plaintiff answered was connected to a telemarketer who falsely identified the company they were calling on behalf of, as "American Benefits."

43. TABLE A below displays calls to phone number ending in -1859 made to Plaintiff.

TABLE A:

| Number: | Date: | Caller ID: | Notes: |
|---|---|---|---|
| 1. | 02/06/2024 | 915-562-8877 | Prerecorded voice message |
| 2. | 02/06/2024 | 915-235-3843 | Prerecorded voice message |
| 3. | 02/07/2024 | 915-565-1175 | Prerecorded voice message |
| 4. | 02/07/204 | 915-858-6962 | Prerecorded voice message. DNC Request |
| 5. | 02/08/2024 | 915-755-5919 | Prerecorded voice message |
| 6. | 02/10/2024 | 915-755-6900 | Prerecorded voice message |
| 7. | 02/13/2024 | 915-755-9710 | Prerecorded voice message |
| 8. | 02/20/2024 | 915-755-2986 | Rawlings sold life insurance to Plaintiff |

44. Defendants' placement of multiple calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since March 2022, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

45. Defendants' violations described in paragraph 32 were knowing and willful because SBLI had "reason to know, or should have known, that [its] conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). Bad faith is not required.

46. SBLI knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violate the TCPA and its regulations.

47. SBLI is well aware of the regulations regarding the TCPA and the ethical prohibition surrounding unsolicited direct advertising to consumers with whom no preexisting relationship exists.

## VICARIOUS LIABILITY OF SBLI FOR TCPA VIOLATIONS MADE BY THE NON-SBLI EMPLOYEES

48. SBLI is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

49. SBLI markets Life Insurance through direct telephone solicitation by its hired telemarketers, who act on its behalf.  Telemarketer transfers live, hot leads to SBLI, and SBLI accepts the leads. Telemarketers were SBLI agents when it made the prohibited calls on behalf of and with the actual authority from telemarketers pursuant to a contract that governs telemarketing for SBLI.

50. SBLI directs, controls, authorizes, and pays Telemarketers to generate live-transfer leads for Defendant SBLI services through telephone solicitation.

51. SBLI sets the criteria for qualifying leads, which Telemarketers must follow, and telemarketers live-transfers leads qualified on those criteria exclusively to SBLI.

52. On information and belief, SBLI writes or at least approves the call script telemarketers use when qualifying leads for SBLI.

53. The telemarketers are SBLI's associates and do nothing to disturb the impression telemarketers work for and speak and act on behalf of SBLI.

54. The Telemarketers are SBLI's associates and do nothing to disturb the impression the telemarketers work for, speak, and act on behalf of SBLI.

55. From the telemarketer's initial call through Defendant SBLI's acceptance of a completed life insurance application, the telemarketing of SBLI's services constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by SBLI, the principal, with Telemarketers acting as SBLI's agent.

56. Telemarketer, Co acting with actual authority, made the prohibited calls at the direct and control of SBLI, qualified Plaintiff according to SBLI's criteria, and then live-transferred Plaintiff to SBLI's advisor to continue marketing final expense life insurance policy.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES TO PLAINTIFF

57. Plaintiff has been denied the use of her phone, enjoyment of his phone, and had the functionality of her phone decreased because of unnecessary charging, erosion of phone memory, and her privacy invaded by the harassing telemarketing calls.

58. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

59. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendants.

60. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to Plaintiff.

### COUNT I
**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

61. Plaintiff incorporates and realleges, as though fully set forth herein, in paragraphs 1-60.

62. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without her prior express written consent.

63. Plaintiff was statutorily damaged at least eight (8) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

64. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

65. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## COUNT II
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)

66. Plaintiff incorporates and realleges, as though fully set forth herein, in paragraphs 1-60.

67. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

68. Even though Plaintiff's number has been registered on the National DNC Registry since March 2022, SBLI made unsolicited telephone solicitations to Plaintiff's residential telephone line without Plaintiff's consent and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

69. Plaintiff suffered the following injuries from each and every TCPA Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by

unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely her cellular telephone.

70. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, *see* Paragraphs 37- 46, the Court may award up to $1500 per violation.

71. Accordingly, Plaintiff seeks and order under Section 227(c)(5) awarding $1500 for each DNC Violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA 227(b) intentional violations jointly and severally against the corporation for eight (8) calls.

E. An award of $1,500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for eight (8) calls;

F. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

G. An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity;

H.   Such further relief as the Court deems necessary, just, and proper.

August 22, 2024,                                                                      Respectfully submitted,

*/s/ Yazmin Gonzalez*

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859

## I.   Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

August 22, 2024,                                                                      Respectfully submitted,

*/s/ Yazmin Gonzalez*

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859