## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **YAZMIN GONZALEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **EP-24-CV-00289-DB** |
| **THE SAVINGS BANK MUTUAL LIFE** | § | |
| **INSURANCE COMPANY OF** | § | |
| **MASSACHUSETTS,** | § | |
| **Defendant.** | | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

On this day, the Court considered the above-captioned case. On October 11, 2024, Plaintiff Yazmin Gonzalez ("Plaintiff"), proceeding pro se, filed "Plaintiff's First Amended Complaint," ECF No.[1] 11, against Defendant The Savings Bank Mutual Life Insurance Company of Massachusetts ("SBLI") alleging violations of 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"). On October 21, 2024, Defendant filed "Defendant's Motion to Dismiss Plaintiff's First Amended Complaint" ("Motion"), seeking dismissal of the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[2] ECF No. 12. Plaintiff timely filed her response[3], ECF No. 17, and Defendant filed their reply, ECF No. 18. Defendant's Motion is now ripe for review. For the foregoing reasons, Defendant's Motion is hereby granted.

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2] Defendant also raised an issue under Federal Rule of Civil Procedure 12(b)(5) alleging insufficient service of process. Mot. 10, ECF No. 12. However, Defendant acknowledges, and the Court agrees, this issue is now moot. *See* Reply 1, ECF No. 18.

[3] Plaintiff was granted an extension of time to file her response. Order, ECF No. 15.

## BACKGROUND

This case involves unsolicited telemarketing calls Plaintiff received between February 2, 2024 and February 20, 2024. *See* First Am. Compl. 5, 7–8, ECF No. 11. The following facts are derived from the First Amended Complaint, ECF No. 11, and are accepted as true to adjudicate this motion. *See McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) (holding that when the court reviews "the dismissal of a complaint for failure to state a claim, [it] must accept all well-pleaded facts as true, and [] view them in the light most favorable to the plaintiff."

In March 2022, Plaintiff registered her phone number ending in -1859 on the National Do-Not-Call Registry ("DNCR"). First Am. Compl. 5, ECF No. 11. On February 2, 2024, Plaintiff began receiving calls "from a variety of spoofed numbers from telemarketers soliciting life insurance" on her phone ending in -1859. *Id.* "Each and every call contained a prerecorded voice message stating the following: 'Hi, this is Stephanie, I'm calling you from American Benefits...'" ("American Benefits Message"). *Id.* Plaintiff answered, heard the American Benefits Message, and voluntarily disconnected the first, second, and third calls. *Id.* During the fourth call, Plaintiff answered, heard the American Benefits Message, and was "connected to a telemarketer who did not identify who he was calling on behalf of" but was "soliciting for life insurance." *Id.* Plaintiff informed the caller "she was not interested and to stop calling." *Id.* at 6. During the fifth and sixth calls, Plaintiff answered, heard the American Benefits Message, and disconnected the calls. *Id.* Plaintiff does not allege any details surrounding the seventh call. *See id.*

Finally, on February 20, 2024, Plaintiff received the eighth call from a phone number ending in -2986. *Id.* "Plaintiff was then connected to the same telemarketer who was soliciting for life insurance." *Id.* Plaintiff pretended to be her mother, "Norma," to "ascertain who

was behind the solicitation calls." *Id.* "The telemarketer asked qualifying questions and then [Plaintiff] was transferred to an agent who identified himself as 'Elsworth Rawlings,' ("Rawlings") who did not identify the company he worked for." *Id.* "Rawlings verified and asked" qualifying questions, then informed Plaintiff "he was going to transfer her to SBLI's agent." *Id.* Rawlings then "internally transferred Plaintiff to a [] SBLI employee who identified herself as 'Bell.' Bell completed the verification of the application by asking Plaintiff each of the same questions that Rawlings had previously asked of Plaintiff." *Id.* "Bell approved Plaintiff's application and transferred Plaintiff back to Rawlings." *Id.* "Rawlings ended the call by congratulating Plaintiff and giving Plaintiff [Rawlings'] contact information." *Id.* "The call never disconnected and was one continuous chain of events from the initial call." *Id.* at 7. On February 27, 2024, Plaintiff received a copy of the SBLI life insurance policy approved by Bell that included Rawlings' signature. *Id.*

Plaintiff alleges 1) Rawlings is a "licensed insurance agent who was appointed by SBLI to market, solicit, and sell insurance on [their] behalf ... on February 20, 2024"; 2) SBLI and Rawlings "set up a phone system that allowed them to coordinate applications and transfer applicants back and forth between" them; and 3) SBLI "appointed Rawlings with the knowledge and expectation that Rawlings would make phone calls to solicit SBLI's products and services." *Id.* at 5, 7. SBLI included the signed "Agreement"[4] between itself and Rawlings as an exhibit to its Motion.[5] Mot. 17, ECF No. 12.

---

[4] The Agreement is titled "The Savings Bank Mutual Life Insurance Company of Massachusetts Producers Agreement." Agreement 1, ECF No.12-3.

[5] Defendant argues that "[b]y virtue of [Plaintiff's] allegations, the agreement between SBLI and Rawlings, a copy of which is attached hereto as Exhibit B-1 ("Agreement"), is referred to and incorporated into the Amended Complaint by reference and may be considered by the Court." Mot. 17, ECF No. 12.

Per this Agreement, SBLI appointed Rawlings to "submit applications and initial premiums for individual life insurance policies, accidental death policies and annuity contracts . . . issued by SBLI and for such other incidental purposes." Mot. 18, ECF No. 12. Rawlings was obligated to "[s]olicit and promptly transmit applications for policies to be issued by [SBLI]." *Id.* Rawlings "was not, however, authorized to "[h]old [himself] out as an employee, partner, joint venturer or associate of SBLI" or to "[h]old [himself] out as an agent or broker of SBLI in any other manner, or for any other purpose, than is specifically prescribed in" the Agreement. *Id.* Rawlings was also required to "conduct [himself] so as not to affect adversely the business or reputation of SBLI" and to "comply with the laws, rules or regulations of any federal, state, or other governmental agency or body having jurisdiction over" the Agreement. *Id.* Plaintiff further alleges the "third-party telemarketer is Rawlings' agent[, so] [t]he third-party telemarketer is SBLI's subagent." First Am. Compl. 10, ECF No. 11. The Court will address each argument in turn.

## LEGAL STANDARD

A. Rule 12(b)(6) Motion to Dismiss

SBLI filed its motion to dismiss under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all well-pleaded facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, a court is not required to accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th

Cir. 2004) (citation omitted). A plaintff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.; Iqbal*, 556 U.S. at 680.

Moreover, courts do hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nevertheless, pro se litigants must set forth either "direct allegations on every material point necessary to sustain a recovery" or "allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). Lastly, when considering a motion to dismiss, a court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

B. Telephone Consumer Protection Act

The TCPA contains two distinct sections that grant individuals a private right of action. Under Section 227(b), the TCPA regulates various telecommunications devices and prohibits the use of certain technologies for calling several types of end-users without an emergency purpose or prior express consent of the called party. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Svcs., LLC*, 565 U.S. 368, 373 (2012). In relevant part, Section 227(b) makes it unlawful for any person to "make

any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . to any telephone number assigned to a . . .cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A).

Under Section 227(c), the TCPA delegates authority to the Federal Communications Commission ("FCC") to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). This subsection grants a private right of action to individuals "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." *Id.* at § 227(c)(5). Unlike Section 227(b), Section 227(c) does not regulate automated technologies; rather, it regulates calling practices to protect rights of privacy of those registered on the FCC's DNCR list. *Horton v. MultiPlan, Inc.*, No. 23-CV-02098, 2024 WL 3380236, at *5 (N.D. Tex. June 7, 2024).

To support a TCPA claim or a claim under the FCC's regulations, a plaintiff can allege either direct liability by showing that the defendant initiated the offending telemarketing calls, or vicarious liability by showing that an entity in an agency relationship with the defendant initiated the calls. *See Cunningham v. Lifestyles Dev., LLC*, 19-CV-00006, 2019 WL 4282039, at *3–4 (E.D. Tex. Aug. 8, 2019). A plaintiff can establish vicarious liability in this context by common law agency principles. *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013).

## ANALYSIS

Plaintiff's First Amended Complaint raises two claims against SBLI under the TCPA: (1) eight (8) "violations under Section 227(b)(1)(A) by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without her prior express written consent", and (2) violations under Section 227(c) and 47 C.F.R. § 64.1200(c) for making eight (8) unsolicited calls to Plaintiff's line, which was registered on the DNCR, without Plaintiff's consent. First Am. Compl. 12–13, ECF No. 11.

In its Motion, SBLI argues Plaintiff fails "to state a plausible TCPA claim against SBLI under either Section 227(b)(1)(A) or Section 227(c)" because she "has not pleaded any factual allegations connecting the calls" to SBLI. Mot. to Dismiss 15, ECF No. 12. In deciding a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources. . . in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted). Documents a defendant attaches to a motion to dismiss can be considered "if they are referred to in the plaintiff's complaint and are central to her claim" because "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted). In this case, SBLI attached the agreement executed between SBLI and Rawlings as an exhibit to its Motion. Mot. 29, ECF No. 12 (citing to Agreement, ECF No. 12-3). This Court will consider this Agreement in deciding SBLI's Motion because Plaintiff refers to SBLI and Rawlings' business relationship in her First Amended Complaint and is therefore central to her claim.

7

A. Plaintiff's claims under Section 227(b)(1)(A) fail because she does allege sufficient facts to connect any call to SBLI.

SBLI cannot be liable under the TCPA where it neither made the call nor controlled or directed the party making the call. To support a TCPA claim, a plaintiff can allege either direct liability by showing that the defendant initiated the offending telemarketing calls, or vicarious liability by showing that an entity in an agency relationship with the defendant initiated the calls. *See DISH Network*, LLC, 28 F.C.C. Rcd. at 6582. Here, Plaintiff has not established direct liability. Plaintiff's First Amended Complaint fails to allege any facts to establish SBLI initiated the calls within the meaning of the TCPA. In fact, as Plaintiff's "Table A" succinctly lists, each call was initiated by American Benefits because Plaintiff alleges each of the calls started with a "prerecorded message" saying "[h]i, this is Stephanie, I'm calling you from American Benefits . . ."). First Am. Compl. 5, 7–8, ECF No. 11. The Court infers the American Benefits telemarketer, not SBLI, is the initial caller. Accordingly, SBLI cannot be directly liable for any of the calls.

Additionally, Plaintiff has not established vicarious liability. Vicarious liability under the TCPA is governed by the federal common law of agency, "including not only formal agency, but also principles of apparent authority and ratification." *Dish Network, LLC*, 28 FCC Rcd. at 6584. For Plaintiff to establish SBLI is vicariously liable for any of the challenged phone calls, Plaintiff must point to sufficient factual allegations to plausibly state an agency relationship between SBLI and the American Benefits telemarketer, the entity that placed the calls. The existence of an agency relationship can be shown by demonstrating (1) actual authority where the principal assigns "the agent's task and controls the means and details of the process by which the

agent will accomplish that task[6]," (2) apparent authority, which holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal[7] or (3) ratification, where a principal may be liable if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances.[8] Further, "a subagent is a person appointed by an agent to perform some duty or the whole of the business relating to his agency" and "may be the agent of the agent or an agent of the principal *depending on the agreement creating the primary agency* or upon the circumstances." *Royal Mortgage Corp. v. Montague,* 41 S.W.3d 721, 735 (Tex. App.—Fort Worth 2001, no pet.) (emphasis added), *abrogated on other grounds by Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 788-89 (Tex. 2005).

    *1. Actual Authority*

       Formal agency, commonly called actual authority, exists when the principal expressly or implicitly grants the agent authority to perform a particular act. Restatement (Third) Of Agency § 3.01 (2006) ("Actual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf."). The essential element of actual authority is the principal's control over the agent's actions. *Heller v. Marriott Vacations Worldwide Corp.*, EP-22-CV-00398-FM-MAT, 2023 WL 6702696 at *5 (W.D. Tex. Oct. 11, 2023). For TCPA cases, the relevant inquiry is "whether the principal controlled—or had the right to control—the 'manner and means' of the

---

[6] *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008).
[7] *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) ("Apparent authority is distinguished from actual authority because it is the manifestation of the principal to the third person rather than to the agent that is controlling").
[8] *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756–57 (Tex. 1980).

telemarketing campaign." *Id.* (citations omitted).   In *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020), the court held that plaintiff had "not made out a prima facie case that an agency relationship exist[ed]" between defendants and an unidentified third-party telemarketer.  The plaintiff alleged receiving a series of phone calls with prerecorded messages selling automotive products and services of two defendants, SunPath Ltd. and Northcoast Warranty Services. *Id.* at 1.  However, the calls connected plaintiff to telemarketers that "did not identify themselves or the company for which they worked." *Id.*  The court noted that affidavits provided by defendants laid out that "neither [defendant] entity maintain[ed] control or oversight over the third-party marketing firms" that made the calls. *Id.* at 3.  Nor did either entity "select who [the] third-party marketing firms market[ed] to or the manner in which those marketing firms conduct[ed] their operations." *Id.*  Significantly, the court noted Plaintiff offered no affidavit or support contradicting Defendant's affidavits. *Id.*  Therefore, because plaintiff only made conclusory assertions that defendants were vicariously liable for the telemarketing calls without stating the nature of the relationship the defendants had with the unidentified telemarketing firm, the court stated it could not "reasonably infer an agency relationship ...." *Id.*

The same is true here.  Plaintiff fails to allege facts that SBLI manifested to either Rawlings or the American Benefits telemarketer its assent that the third-party telemarketer act on SBLI's behalf.  Nor does Plaintiff allege SBLI controlled the manner or means of Rawlings or the American Benefits telemarketer's operations.  Although Plaintiff does allege SBLI had contractual relationship with Rawlings, who allegedly hired the American Benefits telemarketer, Plaintiff does not allege sufficient facts to establish SBLI had control over Rawlings' day-to-day marketing practices, or his phone call practices, nor that Rawlings had such control over the American

Benefits telemarketer. First Am. Compl. 10, ECF No. 11. Based on the terms of the Agreement between SBLI and Rawlings, Rawlings did not have express authority to hire a third-party telemarketer, nor was SBLI in control of how Rawlings was to solicit applications. Mot. 29, ECF No. 12 (citing Agreement 1, ECF No. 12-3). Because a subagent "may be the agent of the agent or an agent of the principal *depending on the agreement creating the primary agency* or upon the circumstances," and Plaintiff fails to allege SBLI controls the manner and means of Rawlings' operations to create an agency relationship, the American Benefits telemarketer cannot be SBLI's subagent. *See Royal Mortgage Corp.*, 41 S.W.3d at 721 (emphasis added). Accordingly, Plaintiff did not plausibly allege a vicarious liability claim based on actual agency.

   2. *Apparent Authority*

   "Under an apparent authority form of agency, an agent has apparent authority to bind a principal if a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Heller*, 2023 WL 6702696 at *7 (citations omitted). "Apparent authority . . . can exist where 'the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority.'" *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 237 (4th Cir. 2019) (citation omitted). Thus, apparent authority must be traceable to the conduct of the principal—in this case to SBLI. *See Callier*, 2020 WL 10285659, at * 4. In its Motion, SBLI asserts it did not hold out either Rawlings or the third-party telemarketer as possessing authority to make automated calls on its behalf. Mot. to Dismiss 20, ECF No. 12. Instead, SBLI asserts it hired Rawlings as an independent contractor who was authorized to transmit applications to it but was not to hold himself out as SBLI's agent. *Id.* at 18. Based on Plaintiff's First Amended Complaint, Rawlings

complied with this directive because he "did not identify the company he worked for." First Am. Compl. 6, ECF No. 11.

Plaintiff also alleges 1) SBLI "instructed Rawlings on what questions to ask on the application: age, birthdate, social security number, various health questions, bank account information, whether Plaintiff had any other existing insurance policies, and various other questions;" 2) SBLI and Rawlings "set up a phone system that allowed them to coordinate applications and transfer applicants back and forth between" them; and 3) SBLI "appointed Rawlings with the knowledge and expectation that Rawlings would make phone calls to solicit SBLI's products and services." *Id.* at 5, 7. Even accepting these facts as true, Plaintiff does not allege facts surrounding SBLI's conduct she was aware of at the time of the call that reasonably led her to believe Rawlings was SBLI's agent. Accordingly, Plaintiff did not plausibly allege Rawlings, or the American Benefits telemarketer, acted with apparent authority.

### 3. Ratification

The final agency theory available to Plaintiff is ratification. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01(1) (AM. L. INST. 2006). A party "could ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." *Id.* A purported principal, however, "is not bound by a ratification made without knowledge of material facts involved in the original at when the [party] was unaware of such lack of knowledge. *Id.* at § 4.06. Therefore, for SBLI to be held vicariously liable under an agency theory of ratification, it must have been aware of any unlawful calls made by the American Benefits telemarketer or Rawlings and SBLI did not object or repudiate any benefits to it. Plaintiff does

not allege that SBLI knew of the American Benefits telemarketer's calls nor Rawlings' conduct to satisfy the knowledge requirement. As such, neither the American Benefits telemarketer nor Rawlings is SBLI's agent under a ratification theory because there are no allegations of SBLI's affirmance of a TCPA-prohibited act by either.

In sum, Plaintiff's First Amended Complaint does not allege sufficient facts to establish the American Benefits telemarketer nor Rawlings are agents of SBLI under any theory of agency. Because Plaintiff has not plausibly alleged SBLI's direct or vicarious liability under the TCPA, Plaintiff's claims under Section 227(b)(1)(A) are dismissed under Rule 12(b)(6).

   B. Plaintiff failed to allege sufficient facts to establish SBLI is responsible for more than one TCPA violative call during a 12-month period.

Plaintiff additionally brings claims against SBLI pursuant to 47 U.S.C. § 227(c) for violations of 47 C.F.R. § 64.1200(c). First Am. Compl. 12, ECF No. 11. Under Section 227(c), the TCPA delegates authority to the FCC to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). This subsection grants a private right of action to individuals "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." *Id.* at § 227(c)(5). Because this Court determined Plaintiff fails to connect even one potentially violative call to SBLI during a 12-month period, the Court finds Plaintiff's claims under Section 227(c) also fail.

## CONCLUSION

For the reasons stated above, Defendant The Savings Bank Mutual Life Insurance Company of Massachusetts' "Motion to Dismiss Plaintiff's First Amended Complaint," ECF No. 12, is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this *15* day of **April 2025**.

_____

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

14